UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLAS AIR, INC. and SOUTHERN AIR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224, <br><br> Defendants. | Civil Action No. |

## DECLARATION OF JEFFREY D. CARLSON

I, Jeffrey D. Carlson, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

1. I am employed by Atlas Air Worldwide Holdings ("AAWH"), which owns Atlas Air, Inc. ("Atlas") and Southern Air, Inc. ("Southern Air"), as Senior Vice President of Flight Operations. Both Atlas and Southern Air are commercial air carriers with national and international operations. I have personal knowledge of the facts set forth below and if called as a witness in this matter, I could and would competently testify thereto.

2. International Brotherhood of Teamsters ("IBT") is the certified collective bargaining representative of the Atlas and Southern Air pilots under the Railway Labor Act ("RLA"). Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224") is the local collective bargaining agent designated by the IBT through International Brotherhood of Teamsters, Airline Division ("IBT Airline Division")

to represent the Atlas and Southern Air pilots (IBT, IBT Airline Division, and Local 1224 together, the "Union").

3. Atlas and IBT Airline Division are parties to a collective bargaining agreement governing the rates of pay, rules, and working conditions of the Atlas pilots (the "Atlas CBA"). The Atlas CBA became effective on September 8, 2011, and became amendable on September 8, 2016.

4. Southern Air and IBT Airline Division, Local 1224 are parties to a collective bargaining agreement governing the rates of pay, rules, and working conditions of the Southern Air pilots (the "Southern Air CBA"). The Southern Air CBA became effective on November 6, 2012, and became amendable on November 6, 2016.

5. In the Atlas CBA, Atlas and the Union have established an arbitration system board of adjustment to resolve grievances regarding the interpretation and application of the Atlas CBA (the "Atlas System Board.") Section 21 of the Atlas CBA provides that the Atlas System Board "shall have jurisdiction over all disputes between a Crewmember and the Company, or between the Company and the Union, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto." I have attached as Exhibit A a true and correct copy of Section 21 of the Atlas CBA.

6. Similarly, in the Southern Air CBA, Southern Air and the Union have established an arbitration system board of adjustment to resolve grievances regarding the interpretation and application of the Southern Air CBA (the "Southern Air System Board."). Section 19 of the Southern Air CBA provides that the Southern Air System Board "shall have jurisdiction over disputes growing out of grievances or out of the interpretation or application of any of the terms

of this Agreement." I have attached as Exhibit B a true and correct copy of Section 19 of the Southern Air CBA.

7. Atlas is a wholly-owned subsidiary of Atlas Air Worldwide Holdings, Inc. ("AAWH").

8. On January 19, 2016, AAWH announced that it intended to acquire Southern Air Holdings, Inc., the corporate parent of Worldwide Air Logistics Group, Inc., which in turn owned two subsidiary air carriers: Southern Air and Florida West International Airways, Inc. AAWH has further announced that it intends to merge the operations of Atlas and Southern Air.

9. In a February 24, 2016 press release, the Union acknowledged that AAWH had "announced its desire to merge the Atlas and Southern airlines and pilots." I have attached as Exhibit C a true and correct copy of the Union's February 24, 2016 press release.

10. Effective April 7, 2016, AAWH's acquisition of Southern Air Holdings, Inc. became effective, and Southern Air is now, like Atlas, a subsidiary of AAWH.

11. Section 1.F of the Atlas CBA sets forth a process for negotiating the terms of a JCBA to govern the pilots of both carriers in the event of a merger. Section 1.F.2.b.iii provides that:

> … in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the Company and an affiliated air carrier . . . . [i]f the crewmembers of the acquired carrier are represented by the Union, then the parties shall on a timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement. If a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list that complies with the provisions of this paragraph F. 2, the parties shall jointly submit the outstanding issues to binding interest arbitration. The interest arbitration shall commence within thirty (30) days from the conclusion of negotiations contemplated by this paragraph, and a final decision shall be issued within sixty (60) days after the commencement of the arbitration.

I have attached as Exhibit D a true and correct copy of Section 1 of the Atlas CBA.

3

12. Since announcing the merger with Southern Air, Atlas has taken the position that Section 1.F.2.b.iii requires the negotiation of a JCBA, and has attempted to commence negotiations with the Union. The Union has taken the position that Section 1.F.2.b.iii does not apply to the current circumstances and has refused to bargain for a JCBA.

13. In order to resolve this dispute over interpretation and application of Section 1.F.2.b.iii, Atlas filed a management grievance under the Atlas CBA on April 14, 2016. In its grievance, Atlas identified the following issue for arbitration before the Atlas System Board: "Is IBT and/or Airline Professionals Association | Teamsters Local Union No. 1224 violating Section 1.F.2.b.iii of the Atlas-IBT CBA by refusing to engage in negotiations for a joint collective bargaining agreement pursuant to the terms and conditions set forth therein in light of the announced operational merger of Atlas and Southern Air, Inc.?" I have attached as Exhibit E a true and correct copy of Atlas's management grievance.

14. In this management grievance, Atlas requested expedited arbitration pursuant to Section 1.H. of the Atlas CBA. Section 1.H. provides that any grievances based on alleged violations of "Section 1 [of the Atlas CBA] shall bypass the initial steps of the grievance process and shall be submitted, heard, and resolved through binding arbitration on an expedited basis directly before the Atlas Crewmembers' System Board of Adjustment sitting with a neutral arbitrator. The dispute shall be heard as soon as possible after submission to the System Board and decided no later than thirty (30) days after the close of hearing, unless the parties agree otherwise in writing."

15. On April 20, 2016, Defendants indicated that they did not believe the management grievance was arbitrable before the Atlas System Board. Subsequently, the parties engaged in discussions for several months to resolve their disputes over Section 1.F.2.b.iii of the

Atlas CBA and the management grievance. These discussions have continued through February 7, 2017, but have not been successful.

16. The Southern Air CBA contains a merger provision that is similar to Section 1.F.2.b.iii of the Atlas CBA. Specifically, Section 1.B.3 of the Southern Air CBA provides:

> In the event of a merger, this Agreement shall be merged with the merging air carrier's crewmember collective bargaining agreement, if any; if such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration;

I have attached as Exhibit F a true and correct copy of Section 1 of the Southern Air CBA.

17. In correspondence with the Union on August 9, 2016, and again on October 21, 2016, Southern Air requested that the Union enter into negotiations for a JCBA to cover the Atlas and Southern Air pilots. Southern Air also stated in its correspondence that to the extent the Union was taking the position that Section 1.B.3 was not applicable because Atlas and Southern Air were not engaging in a "merger" within the meaning of Section 1.B.3., the disagreement would constitute a minor dispute that should be submitted to the Southern Air System Board. Southern Air requested notification if the Union was refusing to negotiate a JCBA under Section 1.B.3, and requested expedited arbitration if this was in fact the Union's position.

18. The Union has not responded to Southern Air's inquiry or its request for expedited arbitration.

19. Accordingly, on January 24, 2017, Southern Air filed a management grievance under the Southern Air CBA to resolve the dispute over interpretation and application of Section 1.B.3. In its grievance, Southern Air identified the following issue for arbitration before the Southern Air System Board: "Is IBT and/or the Airline Professionals Association | Teamsters Local Union No. 1224 violating Section 1.B.3 of the Southern Air-IBT CBA by refusing to

5

engage in negotiations for a joint collective bargaining agreement pursuant to the terms and conditions set forth therein in light of the merger of Atlas Air, Inc. ('Atlas') and Southern Air?" I have attached as Exhibit G a true and correct copy of Southern Air's management grievance.

20. Southern Air, like Atlas, also requested expedited arbitration of its grievance.

21. The Union has not responded to the Southern Air management grievance, and specifically has not agreed to arbitration before the Southern Air System Board.

22. The Union has informed Plaintiffs that Atlas CBA Section 1.F.b.iii and Southern Air CBA 1.B.3 are effectively not enforceable by the Atlas and Southern Air System Boards with respect to the current merger because, according to IBT, those contractual provisions somehow "extinguish" statutory bargaining provisions in the RLA regarding collective bargaining obligations, and thus implicate statutory rather than contractual interpretation issues.

23. This contractual process for formulating a JCBA in the event of a merger was mutually used by Atlas and IBT/IBT Airline Division following the merger of Atlas and Polar Air Cargo, Inc. ("Polar") — which resulted in an interest arbitration in December 2010 and the current Atlas CBA. IBT/IBT Airline Division did not challenge the applicability or enforceability of the contractual merger process as set forth in the then-current Atlas and Polar collective bargaining agreements, which were the predecessors to Section 1.F.2.b.iii of the current Atlas CBA. For example, Section 1.E.2.b.iii of the pre-merger Atlas CBA provided that in the event of a merger the parties must conclude a JCBA "within nine (9) months from the date that the Association presents to the Company a merged seniority list," and, if they failed to do so, "jointly submit the outstanding issues to binding interest arbitration." Similarly, Section 1.D.1.d of the pre-merger Polar CBA provided that a JCBA must be "executed within nine (9) months from the date an integrated seniority list is presented to the successor [or] the parties shall jointly

submit outstanding issues to binding interest arbitration." I have attached as Exhibit H a true and correct copy of the September 3, 2011 Award In the Matter of an Interest Arbitration involving Atlas Air, Inc. and Polar Air Cargo, Inc. and International Brotherhood of Teamsters, Airline Division. I have attached as Exhibit I a true and correct copy of Section 1 of the pre-merger Atlas CBA. I have attached as Exhibit J a true and correct copy of Section 1 of the pre-merger Polar CBA.

24. I have attached as Exhibit K a true and correct copy of the Complaint to Compel Arbitration under the Railway Labor Act filed by Atlas and Southern Air in this matter.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated: February 7, 2017
Purchase, New York

_____
Jeffrey D. Carlson