# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLAS AIR, INC. and SOUTHERN AIR, INC., | Civil Action No. 7:17-cv-00903-NSR |
| Plaintiffs, | |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT AND TO COMPEL ARBITRATION

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036

400 South Hope Street
Los Angeles, California 90071

*Attorneys for Plaintiffs*

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS .................................................................... 3

    A.    The Collective Bargaining Agreements Between Plaintiffs And Defendants ............................................................................. 3

    B.    Defendants' Refusal To Arbitrate Atlas' Grievance ................................ 4

    C.    Defendants' Refusal To Arbitrate Southern's Grievance ..................... 6

    D.    Defendants' NMB Applications ..................................................... 7

ARGUMENT ........................................................................................ 8

    A.    The Disagreements Over The Interpretation And Application Of The Atlas CBA And The Southern CBA Are Minor Disputes Subject To Mandatory Arbitration ............................................................................. 9

    B.    The Court Has Authority To, And Should, Compel Arbitration Of Plaintiffs' Grievances Before The Atlas Board Of Adjustment And The Southern Board Adjustment ......................................................... 10

    C.    Plaintiffs' Request To Compel Arbitration Is Properly Before The Court ......... 11

        1.    This Dispute Is Within This Court's Jurisdiction And Is Not Within The Jurisdiction Of The NMB. ...................................... 11

            a.    This Dispute Is Not Within The NMB's Representation Jurisdiction. ..................................................................... 11

            b.    The NMB Is Not Conducting Mediation With Regards To Defendants' Applications ....................................................... 15

        2.    Atlas' Claim To Compel Arbitration Of Its Management Grievance Is Timely. .................................................................. 16

        3.    Southern Has The Right To Refer This Dispute To The Southern Board Of Adjustment. ............................................ 20

        4.    The Merger Provision Of The Atlas CBA Will Be Interpreted By The Atlas Board Of Adjustment, And The Merger Provision Of The Southern CBA Will Be Interpreted By The Southern Board Of Adjustment. .......................................................... 21

        5.    This Minor Dispute Does Not Raise Statutory Questions Under The RLA. ................................................................. 22

    CONCLUSION ........................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addington v. USAPA,*
606 F.3d 1174 (9th Cir. 2010) ............................................................ 17

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582,*
305 F.3d 82 (2d Cir. 2002) .................................................................. 21

*AFA v. Delta Air Lines, Inc.,*
2010 U.S. Dist. LEXIS 134715 (D.C. Cir. Dec. 21, 2010) ................... 14

*AFA v. United Airlines, Inc.,*
71 F.3d 915 (D.C. Cir. 1995) ........................................................ passim

*AFA. v. United Airlines, Inc.,*
976 F.2d 102 (2d Cir. 1992) ............................................................ 9, 16

*Aircraft Serv. Int'l, Inc. v. IBT,*
779 F.3d 1069 (9th Cir. 2015) .............................................................. 20

*ALPA v. Alaska Airlines, Inc.,*
2005 WL 2898140 (W.D. Wash. Oct. 28, 2005) ................................... 23

*ALPA v. Precision Valley Aviation, Inc.,*
855 F. Supp. 27 (D. N.H. 1993) (same) ............................................... 11

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .............................................................................. 8

*Andrews v. Louisville & Nashville R.R.,*
406 U.S. 320 (1972) .............................................................................. 9

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.,*
373 U.S. 33 (1963) ...................................................................... 9, 11, 16

*Bhd. of R.R. Trainmen v. Chicago River & Indiana R.R. Co.,*
353 U.S. 30 (1957) ................................................................................ 20

*Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.,*
394 U.S. 369 (1969) .............................................................................. 19

*Burlington N. Inc. v. R.R. Yardmasters,*
1976 WL 1570 (N.D. Ill. June 21, 1976) ............................................. 24

*Careflight v. OPEIU,*
612 F.3d 314 (5th Cir. 2010) ................................................................ 21

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)..............................................................................................9

*Chi. & N.W. Ry. Co. v. United Transp. Union,*
  402 U.S. 570 (1971)............................................................................................19

*Chi. Typographical Union No. 16 v. Chi. Sun-Times Inc.,*
  935 F.2d 1501 (7th Cir. 1991) ............................................................................17

*CSX Transp., Inc. v. United Transp. Union,*
  395 F.3d 365 (6th Cir. 2005) ..............................................................................10

*D'Avanzo of Bhd. of Ry. Carmen of Am. (Lodge 886) v. Long Island R.R. Co.,*
  1969 WL 11130 (E.D.N.Y. Feb. 28, 1969) .........................................................10

*Elgin, Joliet & E. Ry. Co. v. Burley,*
  325 U.S. 711 (1945)..............................................................................................9

*Hawaiian Airlines, Inc. v. Norris,*
  512 U.S. 246 (1994)..............................................................................................9

*IBEW Sys. Council U-7 v. N.Y. State Elec. & Gas Corp.,*
  180 F.3d 368 (2d Cir. 1999) ...............................................................................17

*IBT v. Allegiant Air, LLC,*
  788 F.3d 1080 (9th Cir. 2015) ............................................................................14

*IBT. v. Amerijet Int'l, Inc.,*
  604 Fed. Appx. 841 (11th Cir. Mar. 23, 2015) ...................................................11

*Indep. Fed. of Flight Attendants v. Trans World Airlines, Inc.,*
  1987 U.S. Dist. LEXIS 3829 (S.D.N.Y. May 12, 1987) .......................................9

*Int'l Union v. Cummins, Inc.,*
  434 F.3d 478 (6th Cir. 2006) ..............................................................................18

*Lindsay v. Ass'n of Prof'l Flights Attendants,*
  581 F.3d 47 (2d Cir. 2009) ...................................................................................9

*Local 553, TWU v. E. Air Lines, Inc.,*
  695 F.2d 668 (2d Cir. 1983) ...............................................................................19

*N. Am. Airlines, Inc. v. IBT,*
  2005 WL 646350, (S.D.N.Y. Mar. 21, 2005) ......................................................16

*N.C. State Ports Auth. v. N.C. Ports Ry. Comm'n,*
   9 N.M.B. 398 (June 8, 1982) ................................................... 15

*Nat'l Org. for Marriage v. Walsh,*
   714 F.3d 682 (2d Cir. 2013) .................................................. 16

*Order of Ry. Conductors v. Southern Ry. Co.,*
   339 U.S. 255 (1950) .............................................................. 21

*Palmer v. Metro-N. Commuter R.R.,*
   1986 U.S. Dist. LEXIS 30208 (S.D.N.Y. Jan. 22, 1986) ....... 14

*Patrolmen's Benevolent Ass'n v. Long Island R.R. Co.,*
   1987 U.S. Dist. LEXIS 14834 (E.D.N.Y. June 2, 1987) ........ 16

*PHI, Inc. v. OPEIU,*
   2010 WL 3034712 (W.D. La. July 30, 2010) ....................... 20

*Rutland Ry. Corp. v. Bhd. of Loco. Eng'rs,*
   307 F.2d 21 (2d Cir. 1962) .................................................... 19

*Ry. Labor Execs.' Ass'n v. Boston & Me. Corp.,*
   664 F. Supp. 605 (D. Me. 1987) ........................................... 24

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, UAW,*
   29 F.3d 83 (2d Cir. 1994) ...................................................... 17

*Scotto v. Almenas,*
   143 F.3d 105 (2d Cir. 1998) .................................................... 8

*Seaboard World Airlines, Inc. v. TWU,*
   443 F.2d 437 (2d Cir. 1971) .................................................. 23

*Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.,*
   626 F.3d 256 (6th Cir. 2010) ................................................. 17

*Tex. & New Orleans R.R. Co. v. Bhd. of Ry. & S.S. Clerks,*
   281 U.S. 548 (1930) .............................................................. 19

*Tice v. Am. Airlines, Inc.,*
   288 F.3d 313 (7th Cir. 2002) ................................................. 24

*Trans Int'l Airlines, Inc. v. IBT,*
   650 F.2d 949 (9th Cir. 1980) ................................................. 23

Page(s)

*Union Pac. R.R. Co. v. Sheehan,*
    439 U.S. 89 (1978)............................................................................... 10, 11

*W. Airlines v. IBT,*
    480 U.S. 1301 (1987)................................................................................ 10

*Worldcrisa Corp. v. Armstrong,*
    129 F.3d 71 (2d Cir. 1997) ...................................................................... 24

**Statutes**

29 U.S.C. § 108 ................................................................................................ 19

45 U.S.C. § 151 .................................................................................................. 1

45 U.S.C. § 151a ........................................................................................ 11, 19

45 U.S.C. § 152 .................................................................................... 12, 19, 23

45 U.S.C. § 156 ................................................................................................ 23

45 U.S.C. § 184 ..................................................................................... 1, 9, 10, 20

**Rules**

Fed. R. Civ. P. 56............................................................................................ 3, 8

**Other Authorities**

NMB Frequently Asked Questions: Mediation ............................................... 15

The Railway Labor Act
(Douglas W. Hall et al. eds., 4th ed. 2016) ........................................... 12, 15

## PRELIMINARY STATEMENT

Plaintiffs Atlas Air, Inc. ("Atlas") and Southern Air, Inc. ("Southern") (collectively, "Plaintiffs") seek an order under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, to compel the International Brotherhood of Teamsters ("IBT"), International Brotherhood of Teamsters, Airline Division ("IBT Airline Division"), and Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224," and together with IBT and IBT Airline Division, "Defendants")—the bargaining representatives of all pilots employed by Plaintiffs—to arbitrate RLA "minor disputes." These minor disputes involve the interpretation and application of collective bargaining agreements ("CBAs") governing the rates of pay, rules, and working conditions of Atlas and Southern pilots, and Defendants have refused to comply with the mandatory arbitration procedures for such disputes required by the RLA.

Atlas and Southern have announced that they are merging their operations. The CBAs governing the Atlas and Southern pilots each contain provisions governing the negotiation of a joint CBA ("JCBA") in the event that Atlas is involved in an "operational merger" and Southern is involved in a "merger." Plaintiffs contend that these contractual provisions are applicable in the present circumstances and that Defendants must negotiate for a JCBA. Defendants disagree and contend that these contractual provisions are not applicable. Under the RLA, disputes regarding "the interpretation or application of agreements concerning rates of pay, rules or working conditions," such as this one, are known as "minor disputes," which fall within the "mandatory, exclusive and comprehensive" jurisdiction of the appropriate board of adjustment for final and binding arbitration. 45 U.S.C. § 184.

In accordance with the mandate of the RLA, Atlas and Defendants have established in their CBA an arbitration board of adjustment to resolve grievances regarding the interpretation

and application of the Atlas CBA (the "Atlas Board of Adjustment"). Southern and Defendants have also established in their CBA an arbitration board of adjustment to resolve grievances regarding the interpretation and application of the Southern CBA (the "Southern Board of Adjustment"). Atlas and Southern have each filed management grievances before their respective boards of adjustment, alleging that Defendants have refused to negotiate for a JCBA in accordance with the merger provisions of the Atlas CBA and the Southern CBA, respectively. These management grievances concern the interpretation and application of the Atlas CBA and Southern CBA, and, therefore, are minor disputes, which must be arbitrated before the Atlas Board of Adjustment and the Southern Board of Adjustment. Defendants have refused to arbitrate the management grievances before the Atlas and Southern Boards of Adjustment, despite their duty to do so under the RLA. Consequently, Atlas and Southern now seek an order compelling Defendants to arbitrate the Atlas grievance before the Atlas Board of Adjustment and the Southern grievance before the Southern Board of Adjustment.

In their February 23, 2017 letter to this Court, Defendants have not asserted any valid basis to deny this motion. Contrary to Defendants' contentions:

- This action does not involve a representation dispute within the exclusive jurisdiction of the National Mediation Board ("NMB") because it raises only issues relating to the interpretation of the Atlas and the Southern CBAs. The Court will not be required to make a single carrier determination or decide what union represents the pilots at either carrier. *See AFA v. United Airlines, Inc.*, 71 F.3d 915 (D.C. Cir. 1995). Moreover, the NMB does not have mediation jurisdiction over minor disputes concerning interpretation or application of CBAs such as are involved here, and is not conducting mediation on that subject, nor on any other subject at this time.

- Atlas' request to compel arbitration is not time-barred because the parties were attempting to negotiate a resolution of this dispute, as they were required to do under the RLA, until January 2017. Accordingly, Atlas' claim was not ripe, nor did the statute of limitations begin to run, until that time.

- The RLA expressly provides Southern with the right to bring disputes growing out of the interpretation or application of CBAs before the Southern Board of Adjustment.

- The merger provision of the Atlas CBA will be interpreted by the Atlas Board of Adjustment, and the merger provision of the Southern CBA will be interpreted by the Southern Board of Adjustment. Hence, the decision of the Atlas Board of Adjustment will apply to the Atlas pilots, and the Southern Board of Adjustment will apply to the Southern pilots.

- This minor dispute does not raise statutory questions under the RLA because it only involves interpretation of the merger provisions in the CBAs.

This motion raises a purely legal issue, and the minimal facts necessary for the Court to resolve this motion are not in dispute. Because the law clearly requires Defendants to arbitrate Plaintiffs' grievances, Plaintiffs are entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

A.     The Collective Bargaining Agreements Between Plaintiffs And Defendants

Both Atlas and Southern are commercial air carriers with national and international operations. (Statement of Undisputed Material Facts ("Fact Statement") ¶ 1.) IBT is the certified collective bargaining representative of the Atlas and Southern pilots under the RLA. (*Id.* ¶ 2.) Local 1224 is the local collective bargaining agent designated by the IBT through IBT Airline Division to represent the Atlas and Southern pilots. (*Id.*)

Atlas and IBT Airline Division are parties to a CBA governing the rates of pay, rules, and working conditions of the Atlas pilots. (*Id.* ¶ 3.) The Atlas CBA became effective on September 8, 2011, and became amendable on September 8, 2016. (*Id.*) Southern and IBT Airline Division, Local 1224 are parties to a CBA governing the rates of pay, rules, and working conditions of the Southern pilots. (*Id.* ¶ 4.) The Southern CBA became effective on November 6, 2012, and became amendable on November 6, 2016. (*Id.*)

Consistent with the RLA, Atlas and Defendants have established the Atlas Board of Adjustment which, pursuant to the Atlas CBA, "shall have jurisdiction over all disputes between a Crewmember and the Company, or between the Company and the Union, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto." (*Id.* ¶ 5.) Similarly, Southern and Defendants have established the Southern Board of Adjustment, which, pursuant to the Southern CBA, "shall have jurisdiction over disputes growing out of grievances or out of the interpretation or application of any of the terms of this Agreement." (*Id.* ¶ 6.)

B.    Defendants' Refusal To Arbitrate Atlas' Grievance

Atlas is a wholly-owned subsidiary of Atlas Air Worldwide Holdings, Inc. ("AAWH"). (*Id.* ¶ 7.) On January 19, 2016, AAWH announced that it intended to acquire Southern Air Holdings, Inc., the corporate parent of Worldwide Air Logistics Group, Inc., which in turn owned two subsidiary air carriers: Southern and Florida West International Airways, Inc. (*Id.* ¶ 8.) AAWH has further announced that it intends to merge the operations of Atlas and Southern. (*Id.*) In a February 24, 2016 press release, Defendants acknowledged that AAWH had "announced its desire to merge the Atlas and Southern airlines and pilots." (*Id.* ¶ 9.) On April 7, 2016, prior to the date the Atlas and Southern CBAs became amendable, AAWH's acquisition of Southern Air Holdings, Inc. became effective, and Southern is now a subsidiary of AAWH. (*Id.* ¶ 10.) Atlas and Southern now have common senior management in many departments, including labor relations, finance, and operations, and have fully integrated many functions. (*Id.*) The carriers are also working closely with the FAA to merge their operating certificates. (*Id.*)

Section 1.F of the Atlas CBA sets forth a process for negotiating the terms of a JCBA to govern the pilots of both carriers in the event of a merger, providing:

… in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the Company and an affiliated air carrier . . . . [i]f the crewmembers of the acquired carrier are represented by the Union, then the parties shall on a timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement. If a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list that complies with the provisions of this paragraph F. 2, the parties shall jointly submit the outstanding issues to binding interest arbitration. The interest arbitration shall commence within thirty (30) days from the conclusion of negotiations contemplated by this paragraph, and a final decision shall be issued within sixty (60) days after the commencement of the arbitration.

(*Id.* ¶ 11.) Since announcing the merger with Southern, Atlas has taken the position that Section 1.F requires the negotiation of a JCBA, and has attempted to commence negotiations with Defendants. (*Id.* ¶ 12.) Defendants have taken the position that Section 1.F does not apply to the current circumstances and have refused to bargain for a JCBA. (*Id.*)

In order to resolve this dispute over interpretation and application of Section 1.F, Atlas filed a management grievance under the Atlas CBA on April 14, 2016. (*Id.* ¶ 13.) In its grievance, Atlas identified the following issue for arbitration: "Is IBT and/or Airline Professionals Association | Teamsters Local Union No. 1224 violating Section 1.F.2.b.iii of the Atlas-IBT CBA by refusing to engage in negotiations for a [JCBA] pursuant to the terms and conditions set forth therein in light of the announced operational merger of Atlas and Southern Air, Inc.?" (*Id.*) In this grievance, Atlas requested expedited arbitration. (*Id.* ¶ 14.)

On April 20, 2016, Defendants sent a letter to Atlas stating that the grievance is "not arbitrable" but expressing that Defendants "look forward to an amicable resolution of our dispute through consensual negotiations." (*Id.* ¶ 15.) Accordingly, for the next nine months, the parties engaged in negotiating a compromise of the underlying issue raised by the management grievance (i.e., whether the merger procedures in Section 1.F of the Atlas CBA compelled

negotiation of a JCBA and if necessary an interest arbitration to formulate the JCBA), which, if successful, could have eliminated the need for the management grievance, or at the very least, the need for a court action to compel arbitration. (*Id.* ¶¶ 16-23.) Throughout the negotiations, the parties consistently reserved their positions as to whether Section 1.F applies in the present circumstances as well as Atlas' right to pursue the management grievance. (*Id.*) For example, Defendants' July 14, 2016 opening proposal stated:

> the Parties expressly reserve, and therefore do not waive, their respective rights and positions concerning the applicability of the merger provisions set forth in Section 1 of the current collective bargaining agreement between Atlas and the Union covering the Atlas and Polar Crewmembers. This preservation of rights and positions by the Parties covers the management grievance filed on April 14, 2016 by Atlas against the Union (the "Atlas Management Grievance"). While this LOA remains in effect, however, both Parties agree to suspend/toll/defer their dispute relating to the management grievance.

(*Id.* ¶ 17.) On January 23, 2017, Defendants provided a counterproposal that, in Atlas' view, sought "to fundamentally alter" and was "inconsistent with the purpose of the Company's compromise proposal." (*Id.* ¶¶ 23-24.) Consequently, Atlas concluded in February 2017 "that the IBT has effectively rejected the Company's compromise proposal." (*Id.* ¶ 24.)

C.   Defendants' Refusal To Arbitrate Southern's Grievance

The Southern CBA contains a merger provision that is similar to Section 1.F.2.b.iii of the Atlas CBA. (*Id.* ¶ 25.) Specifically, Section 1.B.3 of the Southern CBA provides:

> In the event of a merger, this Agreement shall be merged with the merging air carrier's crewmember collective bargaining agreement, if any; if such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration;

(*Id.*) In correspondence with Defendants on August 9, 2016 and on October 21, 2016, Southern requested that Defendants enter into negotiations for a JCBA. (*Id.* ¶ 26.) Southern also stated that to the extent Defendants were taking the position that Section 1.B.3 was not applicable

because Atlas and Southern were not engaging in a "merger" within the meaning of Section 1.B, the disagreement would constitute a minor dispute that must be submitted to the Southern Board of Adjustment.  (*Id.*)  Southern requested notification if Defendants were refusing to negotiate a JCBA under Section 1.B, and requested expedited arbitration if this was Defendants' position.  (*Id.*)  Defendants did not respond.  (*Id.*)  Accordingly, on January 24, 2017, Southern filed a management grievance over interpretation and application of Section 1.B.  (*Id.* ¶ 27.)

In its grievance, Southern identified the following issue for arbitration:  "Is IBT and/or the Airline Professionals Association | Teamsters Local Union No. 1224 violating Section 1.B.3 of the Southern Air-IBT CBA by refusing to engage in negotiations for a [JCBA] pursuant to the terms and conditions set forth therein in light of the merger of Atlas Air, Inc. ('Atlas') and Southern Air?"  (*Id.*)  Southern, like Atlas, also requested expedited arbitration of its grievance.  (*Id.* ¶ 28.)  On February 8, 2017, Defendants sent a letter to Southern stating that the grievance is "nonarbitrable" but expressing that they "look forward to an amicable resolution of our dispute through consensual negotiations."  (*Id.* ¶ 29.)

      D.     <u>Defendants' NMB Applications</u>

IBT Airline Division filed an application with the NMB on April 13, 2016, seeking mediation of the collective bargaining negotiations between Atlas and IBT to amend the current Atlas CBA.  (*Id.* ¶ 30.)  Atlas opposed the application and argued to the NMB that Section 1.F of the Atlas CBA required the parties to negotiate a JCBA, not a separate Atlas CBA, but given Defendants' disagreement about the applicability of Section 1.F, the NMB should defer mediation of a separate Atlas CBA pending resolution of the minor dispute.  (*Id.* ¶ 31.)

The NMB issued a docket number for the application pursuant to its normal procedures, but in doing so, the NMB notified the parties that it is "investigat[ing] the complexity of issues

associated with this application prior to beginning any mediation sessions." (*Id.* ¶ 32.) As part of the investigation, the NMB issued a notice of a "fact finding meeting" for June 23-24, 2016. (*Id.* ¶ 33.) The NMB communicated to the parties that this meeting was "[n]ot mediation." (*Id.*) At the meeting, the Company explained its position that the NMB should not conduct mediation until the minor dispute was resolved by the Atlas Board of Adjustment. (*Id.* ¶ 34.) The parties have not met with any other NMB representative since that date, nor has the NMB scheduled any mediation sessions or given any indication that it intends to do so. (*Id.*)

More recently, on January 10, 2017, the IBT Airline Division filed an application with the NMB to mediate negotiations between Southern and IBT to amend the Southern CBA, which was also docketed by the NMB pursuant to normal procedures. (*Id.* ¶ 35.) Southern opposed the application. (*Id.* ¶ 36.) The NMB has not scheduled any mediation dates or indicated that it will do so. (*Id.*)

## ARGUMENT

Summary judgment is to be granted if "there is no genuine dispute as to any material fact," thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law," and they raise a genuine dispute when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In opposition to a summary judgment motion, parties "may not rely on conclusory allegations or unsubstantiated speculation" but "must produce specific facts"—i.e., evidence—showing a genuine dispute of material fact. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Accordingly, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
Because this dispute turns entirely on a legal issue, and the minimal facts required for the Court
to rule on the legal issue are undisputed, Plaintiffs more than satisfy this standard.

A.     The Disagreements Over The Interpretation And Application Of The Atlas CBA
       And The Southern CBA Are Minor Disputes Subject To Mandatory Arbitration.

Plaintiffs' grievances constitute minor disputes under the RLA.  A minor dispute "grows
out of grievances or out of the interpretation or application of agreements covering rates of pay,
rules, or working conditions." *Lindsay v. Ass'n of Prof'l Flights Attendants*, 581 F.3d 47, 51 (2d
Cir. 2009); *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945); 45 U.S.C. § 184.
As courts in this Circuit have ruled, "Minor Disputes involve the application of particular
provisions of an agreement that are not the subject of a proposal for change." *Indep. Fed. of
Flight Attendants v. Trans World Airlines, Inc.*, 1987 U.S. Dist. LEXIS 3829, at *7 (S.D.N.Y.
May 12, 1987).  "In other words, . . . minor disputes [seek] to enforce [contractual rights]."
*Lindsay*, 581 F.3d at 51 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994)).[1]

Minor disputes fall within the "mandatory, exclusive and comprehensive" jurisdiction of
the appropriate board of adjustment.  *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R.
Co.*, 373 U.S. 33, 36-38 (1963).  "The right of one party to place the disputed issue before the
Adjustment Board, with or without the consent of the other, has been firmly established." *Id.*;
*see also Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323-24 (1972); *see, e.g., AFA. v.
United Airlines, Inc.*, 976 F.2d 102, 104 (2d Cir. 1992) (holding that minor dispute was within
exclusive jurisdiction of board); *Indep. Fed. of Flight Attendants*, 1987 U.S. Dist. LEXIS 3829,

---

[1] Major disputes, over which a court may have jurisdiction, "arise where there is no . . .
agreement or where it is sought to change the terms of one, and therefore the issue is not whether
an existing agreement controls the controversy.  They look to the acquisition of rights for the
future, not to assertion of rights claimed to have vested in the past." *Elgin*, 325 U.S. at 722-23.

at *16 (same); 45 U.S.C. § 184. Decisions of the board of adjustment are final and binding on the parties. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).

Plaintiffs' grievances indisputably involve the interpretation and application of the Atlas and Southern CBAs. Atlas and Defendants have a disagreement over whether the procedures contained in Section 1.F of the Atlas CBA, which require, among other things, negotiation of a JCBA in the event of a merger, are applicable to the present circumstances. Southern and Defendants similarly have a disagreement over whether the procedures contained in Section 1.B of the Southern CBA to negotiate for a JCBA in the event of a merger apply to the present situation. These disagreements "grow[] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions" and, as such, are minor disputes under the RLA. Accordingly, they must be resolved through final and binding arbitration before the Atlas and Southern Boards of Adjustment. *See, e.g.*, *D'Avanzo of Bhd. of Ry. Carmen of Am. (Lodge 886) v. Long Island R.R. Co.*, 1969 WL 11130, at *5 (E.D.N.Y. Feb. 28, 1969) (effect of provision prohibiting parties from serving notices to open negotiations of CBA before a certain date on notice served before that date was a minor dispute); *CSX Transp., Inc. v. United Transp. Union*, 395 F.3d 365, 368-69 (6th Cir. 2005) (same).

B. <u>The Court Has Authority To, And Should, Compel Arbitration Of Plaintiffs' Grievances Before The Atlas Board Of Adjustment And The Southern Board Adjustment.</u>

The federal courts have the authority under the RLA to compel arbitration of minor disputes, like the present dispute between Plaintiffs and Defendants. *W. Airlines v. IBT*, 480 U.S. 1301, 1302 (1987) (a court may compel arbitration of a minor dispute even though the court lacks authority to interpret the terms of a CBA). An order compelling Defendants promptly to arbitrate the parties' disputes is necessary to preserve the integrity of the RLA's

dispute-resolution procedures and the jurisdiction of the Atlas Board of Adjustment and the Southern Board of Adjustment. Indeed, "recognizing federal courts' limited authority to compel arbitration of minor disputes furthers one of the stated purposes of the RLA by ensuring 'the prompt and orderly settlement of all disputes growing out of grievances.' 45 U.S.C. § 151a(5)." *IBT. v. Amerijet Int'l, Inc.*, 604 Fed. Appx. 841, 849 (11th Cir. Mar. 23, 2015) (remanding case to district court to issue order to compel); *see, e.g.*, *AFA v. United Airlines, Inc.*, 71 F.3d 915, 920 (D.C. Cir. 1995) (compelling arbitration of grievance before board of adjustment); *ALPA v. Precision Valley Aviation, Inc.*, 855 F. Supp. 27, 28 (D. N.H. 1993) (same). *See also Sheehan*, 439 U.S. at 94 ("Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of . . . disputes" through arbitration boards.); *Bhd. of Locomotive Eng'rs*, 373 U.S. at 39 (Congress intended the remedies provided by boards "to be the complete and final means for settling minor disputes.").

Here, the parties have established boards of adjustment, as they are required to do under the RLA, to resolve disputes over contract interpretation. As the undisputed facts establish, the parties' disagreements are minor disputes, which are for those boards to resolve. Hence, the Court should order Defendants to promptly arbitrate the Atlas and Southern grievances.

C.     Plaintiffs' Request To Compel Arbitration Is Properly Before The Court.

1.     **This Dispute Is Within This Court's Jurisdiction And Is Not Within The Jurisdiction Of The NMB.**

a.     This Dispute Is Not Within The NMB's Representation Jurisdiction.

In their letter to this Court, Defendants argue that "Plaintiffs are trying to force Defendants and Plaintiffs' pilots to merge their respective CBAs and seniority lists," and that

"[i]n so doing, Plaintiffs are attempting to bypass the NMB's merger procedures, seeking instead to enmesh the Court in a representation dispute concerning whether Atlas, Southern, and Florida West constitute a single transportation system for collective bargaining purposes under the RLA," the resolution of which "falls exclusively within the jurisdiction of the NMB." (Feb. 23, 2017 Letter at 2.) Defendants are demonstrably incorrect.

In the context of a merger, upon application of a union, the NMB has jurisdiction to decide whether the merging entities constitute a "single transportation system," commonly called a "single carrier," for union representation purposes. The Railway Labor Act at 10-4 - 10-5 (Douglas W. Hall et al. eds., 4th ed. 2016). If the entities constitute a single carrier for purposes of a craft or class, the NMB will then investigate which union, if any, will represent the craft or class at the single carrier. *Id.*; 45 U.S.C. § 152, Ninth. The present dispute involving interpretation and application of the CBAs, however, does not involve the NMB's representation jurisdiction, and Defendants have not sought to invoke the NMB's representation jurisdiction. The management grievances do not address the question of whether Atlas and Southern should be deemed a "single carrier" under the RLA, or which union should represent the pilots (in fact, here the same union—IBT— already represents both pre-merger pilot groups). The grievances only address the question of whether the contractual bargaining process for a JCBA, under Section 1.F of the Atlas CBA and Section 1.B.3 of the Southern CBA, applies here.

The D.C. Circuit has rejected an argument virtually identical to the one Defendants make in their letter to the Court. In *AFA v. United Airlines, Inc.*, 71 F.3d 915 (D.C. Cir. 1995), after United Airlines purchased Air Wisconsin, the Association of Flight Attendants ("AFA"), which represented the flight attendants at both United and Air Wisconsin, sued to compel United Airlines to arbitrate before the board of adjustment regarding a provision in the AFA-United

CBA allegedly requiring that the Air Wisconsin flight attendants be on the AFA-United flight attendant seniority list and be covered by the AFA-United CBA. *Id.* at 916-17. United argued that arbitration regarding that contract provision would impermissibly intrude on the NMB's representation jurisdiction because the arbitration would involve the question of whether United and Air Wisconsin were a "single carrier" under the RLA requiring the combination of both carriers' flight attendant groups into a single bargaining unit (called a "craft or class" under the RLA). *Id.* at 917-18.

The D.C. Circuit squarely rejected United's argument and ordered arbitration of the "minor dispute" concerning interpretation of the CBA provision. *Id.* at 920. In doing so, the D.C. Circuit relied on the fact that the two groups of flight attendants were represented by the same union and thus the arbitration would not determine which of two unions would represent the flight attendants. *Id.* at 918-19. And the D.C. Circuit also relied on the fact that the arbitration would not "interfere[] legally or practically with the Board's capacity, *at any time*— whether in connection with an election or otherwise—to determine whether the flight attendants at both airlines constitute one or separate crafts or classes." *Id.* at 919. In that regard, the court noted that "[c]ollective bargaining agreements . . . are not necessarily coextensive with bargaining units," and that "[i]t is rather common, for instance, for a multi-employer bargaining group to arrive at one contract covering separate employers and therefore separate bargaining units." *Id.* The court thus concluded that even if an arbitrator were to determine that the CBA provision in dispute required that the AFA-United CBA be applied to the Air Wisconsin flight attendants, "the important point is that the [NMB] is free to make its own decision" regarding whether United and Air Wisconsin were a single carrier under the RLA and whether the two

flight attendant groups should be combined in one bargaining unit, if and when the flight attendants sought such a ruling from the NMB. *Id.*

The holding in *AFA v. United Airlines* is persuasive precedent here. Just as in that case, the same union represents the pilots at both carriers, and thus the arbitrator will not be asked to determine which of two unions represents the pilots. And just as in that case, the arbitrator will not be asked to determine whether Atlas and Southern are a single carrier under the RLA, or whether the two pilots groups should be combined as a single bargaining unit under the RLA. Those issues will be reserved for the NMB, which will be "free to make its own decision," if and when the pilots request such a ruling. *Id.* The arbitrator will be asked only to interpret and apply Sections 1.F and 1.B.3 of the CBAs—a minor dispute within the exclusive jurisdiction of the boards of adjustment.

Thus, contrary to Defendants' argument, arbitration of the management grievances in this case will not intrude on the NMB's representation jurisdiction. *See, e.g.*, *Palmer v. Metro-N. Commuter R.R.*, 1986 U.S. Dist. LEXIS 30208, at *5 (S.D.N.Y. Jan. 22, 1986) ("The instant action is not a dispute between unions. Nor do plaintiffs (all of whom were members of either UTU or BLE) dispute the fact that these unions were their representatives."); *IBT v. Allegiant Air, LLC*, 788 F.3d 1080, 1089 (9th Cir. 2015) ("[N]o competing unions vie for the right to bargain, and no employees seek to remain or become unaffiliated . . . Accordingly, this case does not raise a representation dispute."); *AFA v. Delta Air Lines, Inc.*, 2010 U.S. Dist. LEXIS 134715, at *16, 21-22 (D.C. Cir. Dec. 21, 2010) ("[T]he question of which representative was certified was distinct and settled . . . What the plaintiffs allege is that Delta engaged in conduct that violates the RLA . . . Thus, the plaintiffs' claims are not representation disputes.").

b.   The NMB Is Not Conducting Mediation With Regards To Defendants' Applications.

Contrary to the assertions in Defendants' letter to the Court (*see* Feb. 23, 2017 Letter at 2), the NMB has not asserted its mediation jurisdiction with respect to the negotiations between Plaintiffs and Defendants.  The fact that the NMB has taken the administrative step of issuing docket numbers for the two applications says nothing about whether the NMB will decide that mediation to amend the separate CBAs, as requested by Defendants, is appropriate.  Pursuant to its procedures, the NMB automatically assigns a docket number to an application without making any decision regarding the propriety of the application itself.  *See* NMB Frequently Asked Questions: Mediation ("11.  Q: What happens after the application is received by the NMB?  A: The application is first reviewed to ensure that it is completed properly and appropriately, and if so, the case is then docketed."); The Railway Labor Act 6-20 (Douglas W. Hall et al. eds., 4th ed. 2016) ("Upon receipt of the mediation request at the NMB's offices in Washington, D.C., the Board will process the request and assign it a case number.").  Indeed, the Board has on many occasions assigned a docket number to an application only to dismiss the application for lack of jurisdiction after investigating the underlying facts.  *See, e.g.*, *N.C. State Ports Auth. v. N.C. Ports Ry. Comm'n*, 9 N.M.B. 398 (June 8, 1982) (ruling that it did not have jurisdiction after assigning application a case number).

In response to Defendants' applications for mediation, Plaintiffs informed the NMB that Plaintiffs have filed grievances to require Defendants to participate in the agreed-upon contractual process for formulating a JCBA, and that mediation by the NMB regarding amendments to the two separate CBAs should not proceed, at least pending resolution of the grievances by the boards of adjustment.  The only subsequent action the NMB has taken is to

hold a pre-mediation fact finding meeting in June 2016 to consider whether mediation is

appropriate in light of the minor disputes over the merger procedures in the Atlas and Southern

CBAs.  That fact finding meeting, according to the NMB, was "not mediation."  In the nine

months since that meeting, the NMB has not scheduled any mediation sessions, or given any

indication that it will initiate mediation until after the parties have resolved their minor disputes.

In any event, whether or not the NMB were ever to schedule mediation sessions based on

Defendants' applications, it is indisputable that the NMB does not have jurisdiction, during

mediation or otherwise, to decide the minor disputes regarding interpretation and application of

CBAs that are involved here.  *Patrolmen's Benevolent Ass'n v. Long Island R.R. Co.*, 1987 U.S.

Dist. LEXIS 14834, at *2 (E.D.N.Y. June 2, 1987).  Those disputes are for the exclusive

arbitration jurisdiction of the board of adjustment.  *Bhd. of Locomotive Eng'rs*, 373 U.S. at 36-

38; *AFA. v. United Airlines, Inc.*, 976 F.2d at 104.

2. **Atlas' Claim To Compel Arbitration Of Its Management Grievance Is Timely.**

Contrary to Defendants' claim, Atlas' request to compel arbitration of its management

grievance is not time-barred.  (*See* Feb. 23, 2017 Letter at 2.)  Indeed, it was not until January

2017—following months of  negotiations—that Defendants effectively rejected the Company's

compromise proposal regarding whether the parties would negotiate a JCBA pursuant to Section

1.F of the Atlas CBA.  And therefore, until that time, Atlas' claim to compel arbitration of its

grievance was not ripe, nor did the statute of limitations begin to run.

The law is clear that "[a] claim is not ripe if it depends upon contingent future events that

may not occur as anticipated, or indeed may not occur at all."  *Nat'l Org. for Marriage v. Walsh*,

714 F.3d 682, 687 (2d Cir. 2013).[2]  A claim asserted during the course of ongoing negotiations between a union and an employer cannot be ripe because any court ruling "would merely resolve a philosophical dispute between two adversaries engaged in a dynamic and fluid labor negotiation."  *See N. Am. Airlines, Inc. v. IBT*, 2005 WL 646350, at *10-11 (S.D.N.Y. Mar. 21, 2005) ("A court ruling, then, on the 'right' of a company to adopt unilateral changes in such a vacuum would be purely advisory."); *see also Addington v. USAPA*, 606 F.3d 1174, 1179 (9th Cir. 2010) ("At this point, neither the West Pilots nor USAPA can be certain what seniority proposal ultimately will be acceptable to both USAPA and the airline as part of a final CBA."); *Chi. Typographical Union No. 16 v. Chi. Sun-Times Inc.*, 935 F.2d 1501, 1508 (7th Cir. 1991) (motion to compel premature because the arbitration demand stemmed from a "final offer" made by the employer—a "final offer" followed by months of continued bargaining).

Similarly, the statute of limitations on an action to compel arbitration only begins to run "when a party unequivocally refuses a demand to arbitrate."  *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, UAW*, 29 F.3d 83, 87 (2d Cir. 1994) (ordering that arbitration be compelled). Taking the position that a dispute is not arbitrable does not constitute a "clear[] and unequivocal[] refus[al] to proceed," and thus does not commence the statute of limitations.  *See IBEW Sys. Council U-7 v. N.Y. State Elec. & Gas Corp.*, 180 F.3d 368, 370 (2d Cir. 1999) (affirming order of summary judgment); *see, e.g.*, *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 259-60 (6th Cir. 2010) (although the employer consistently took the position that the dispute was not arbitrable, it also requested "clarification" of the union's position and on one occasion agreed to postpone the hearing date; the court held that this conduct

---

[2] Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

did not "indicate a position that Anheuser-Bush believed negotiation or settlement was not feasible," and thus did not trigger the statute of limitations); *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006) ("Although [the employer] did state in June of 2003 that the grievance was not arbitrable, its subsequent conduct . . . suggested that it was still open to negotiating with the Union.")

Here, Defendants initially notified Atlas on April 20, 2016 that the grievance was "not arbitrable," but then proceeded to negotiate with Atlas for approximately nine months and exchanged dozens of proposals regarding a compromise of the underlying issue raised by the management grievance (i.e., whether the merger procedures in the Atlas CBA compelled negotiation of a JCBA and if necessary an interest arbitration to formulate the JCBA)—which, if successful, could have eliminated the need for the grievance, or at the very least, the need for a court action to compel arbitration of the grievance. (Fact Statement ¶¶ 15-23.) Throughout negotiations, Atlas consistently reserved its right to pursue its grievance and Defendants reserved their rights as well. In fact, Defendants' opening proposal stated:

> the Parties expressly reserve, and therefore do not waive, their respective rights and positions concerning the applicability of the merger provisions set forth in Section 1 of the current collective bargaining agreement between Atlas and the Union covering the Atlas and Polar Crewmembers. This preservation of rights and positions by the Parties covers the management grievance filed on April 14, 2016 by Atlas against the Union (the "Atlas Management Grievance"). While this LOA remains in effect, however, both Parties agree to suspend/toll/defer their dispute relating to the management grievance.

(*Id.* ¶ 17.) It was not until January 2017 that Defendants effectively rejected Atlas' compromise proposal, and thus Atlas' claim to compel arbitration did not become ripe, nor did the statute of limitations begin to run, until that time. (*Id.* ¶ 24.)

This result is consistent with the RLA and the Norris-LaGuardia Act ("NLGA"), another federal law governing labor relations, which require carriers and unions to attempt to resolve their disputes through negotiation prior to initiating litigation. Indeed, one of the primary purposes in enacting the RLA was to avoid any interruption to the nation's transportation system. 45 U.S.C. § 151; *Tex. & New Orleans R.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 565 (1930). To this end, Section 2, First of the RLA imposes a duty upon "all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements . . . ." 45 U.S.C. § 152, First. This duty is not "a mere statement of policy or exhortation to the parties"; it is an affirmative legal obligation, "enforceable by whatever appropriate means might be developed on a case-by-case basis," including injunction. *Chi. & N.W. Ry. Co. v. United Transp. Unio*n, 402 U.S. 570, 577 (1971). The Supreme Court has described this duty as the "heart" of the RLA. *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377-78 (1969).

Similarly, the NLGA states: "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, *or who has failed to make every reasonable effort to settle such dispute either by negotiation* or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108. "This provision is almost identical to section 2, First, of the RLA, which imposes on all parties the duty to make every reasonable effort to settle disputes. 45 U.S.C. § 152, First." *Local 553, TWU v. E. Air Lines, Inc.*, 695 F.2d 668, 679 (2d Cir. 1983); *see also Rutland Ry. Corp. v. Bhd. of Loco. Eng'rs*, 307 F.2d 21, 39, 41 (2d Cir. 1962).

As courts have consistently held, "the 'over-all policy' of the RLA and the NLGA is the same: to encourage use of the *nonjudicial* processes of negotiation, mediation and arbitration for the adjustment of labor disputes." *Aircraft Serv. Int'l, Inc. v. IBT*, 779 F.3d 1069, 1079 (9th Cir. 2015); *see also PHI, Inc. v. OPEIU*, 2010 WL 3034712, at *10 (W.D. La. July 30, 2010) ("To award the Unions the equitable relief they seek would undercut the very purpose and scheme of the RLA, inasmuch as it would reward the Unions for rejecting the opportunity to settle its disputes with PHI . . . ."). By filing the current lawsuit only after negotiations with Defendants proved futile, Atlas honored its obligations under the RLA and NLGA.

3.      **Southern Has The Right To Refer This Dispute To The Southern Board Of Adjustment.**

Contrary to Plaintiffs' contention (*see* Feb. 23, 2017 Letter at 3), Southern has the right to bring this dispute before the Southern Board of Adjustment. Section 184 of the RLA expressly provides Southern with the right to submit a dispute growing out of the interpretation or application of CBAs directly to the Southern Board of Adjustment:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on April 10, 1936 before the National Labor Relations Board, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by *either* party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

45 U.S.C. § 184. And the Supreme Court has interpreted nearly identical language in Section 153, First, of the RLA to bestow upon both the union and the employer the right to submit a dispute regarding interpretation or application of a CBA to the board of adjustment. *See Bhd. of R.R. Trainmen v. Chicago River & Indiana R.R. Co.*, 353 U.S. 30, 34 (1957) ("This language is

unequivocal. Congress has set up a tribunal to handle minor disputes . . . *And either side may submit the dispute to the Board.*"); *Order of Ry. Conductors v. Southern Ry. Co.*, 339 U.S. 255, 256-57 (1950) ("after negotiations have failed 'either party' may refer the dispute to . . . the Adjustment Board").

In their letter, Defendants cite to *Adirondack Transit Lines, Inc. v. United Transportation Union, Local 1582*, 305 F.3d 82 (2d Cir. 2002), and *Careflight v. OPEIU*, 612 F.3d 314 (5th Cir. 2010), for the proposition that Southern does not have the right under the RLA to refer this dispute to the Southern Board of Adjustment. These cases are inapposite. *Adirondack* involved a different labor statute, and the court did not address Section 184 of the RLA. 305 F.3d at 87-88. *Careflight* held only that an employer and a union could agree to exclude certain disputes from the grievance and arbitration process. 612 F.3d at 323-25.

4. **The Merger Provision Of The Atlas CBA Will Be Interpreted By The Atlas Board Of Adjustment, And The Merger Provision Of The Southern CBA Will Be Interpreted By The Southern Board Of Adjustment.**

Defendants contend that the Atlas grievance is non-arbitrable because a decision by the Atlas Board of Adjustment to require negotiation of a JCBA will necessarily affect the rights of the Southern pilots. (*See* Feb. 23, 2017 Letter at 2-3.) This argument has no merit because Southern has filed a separate management grievance regarding the interpretation of Section 1.B.3 of the Southern CBA to be heard by the Southern Board of Adjustment. Therefore, the Atlas Board of Adjustment will decide only whether the Atlas pilots are required to negotiate for a JCBA under Section 1.F of the Atlas CBA, and the Southern Board of Adjustment will decide only whether the Southern pilots are required to negotiate for a JCBA under Section 1.B.3 of the Southern CBA.

5.    **This Minor Dispute Does Not Raise Statutory Questions Under The RLA.**

Defendants contend that Section 1.F of the Atlas CBA and Section 1.B of the Southern CBA are effectively unenforceable because they somehow "extinguish" statutory provisions in the RLA regarding the collective bargaining process, and therefore the grievances implicate statutory rather than contractual interpretation issues.[3] (*See* Feb. 23, 2017 Letter at 3.)

Defendants are wrong. First, the Atlas and Southern management grievances seek only an interpretation of Section 1.F and Section 1.B of the CBAs, and not the RLA, and the boards of adjustment have full authority to provide those interpretations.[4] Second, to the extent that Defendants are contending that the contractual procedures are somehow unenforceable because they deviate from the bargaining process outlined by Section 6 of the RLA, the RLA and case

---

[3] This contractual process for formulating a JCBA in the event of a merger was mutually used by Atlas and IBT/IBT Airline Division following the previous merger of Atlas and Polar Air Cargo, Inc. ("Polar")—which resulted in an interest arbitration in December 2010 and the current Atlas CBA. (Fact Statement ¶ 37.) IBT/IBT Airline Division did not challenge the applicability or enforceability of the contractual merger process as set forth in the then-current Atlas and Polar CBAs, which were virtually the verbatim predecessors to Section 1.F of the current Atlas CBA. (*Id.*) For example, Section 1.E.2.b.iii of the pre-merger Atlas CBA provided that in the event of a merger the parties must conclude a JCBA "within nine (9) months from the date that the Association presents to the Company a merged seniority list," and, if they failed to do so, "jointly submit the outstanding issues to binding interest arbitration." (*Id.*) Similarly, Section 1.D.1.d of the pre-merger Polar CBA provided that a JCBA must be "executed within nine (9) months from the date an integrated seniority list is presented to the successor [or] the parties shall jointly submit outstanding issues to binding interest arbitration." (*Id.*)

[4] Defendants' own arguments demonstrate that this is a minor dispute. Defendants claim that the Atlas CBA merger provisions are not triggered here because AAWH, the parent of Atlas, acquired Southern, and the Atlas CBA requires Atlas to acquire another air carrier in order to trigger the contractual merger provisions. Atlas disagrees, and that disagreement involves the interpretation or application of the Atlas CBA—a minor dispute within the exclusive jurisdiction of the Atlas Board of Adjustment. Regardless, the merger provisions also may be triggered, pursuant to Article 1.F.2(ii), where, as here, "the Company [defined as 'Atlas Air, Inc. and Polar Air Cargo Worldwide, Inc.'] decides there will be a complete operational merger between the Company and an affiliated air carrier."

law demonstrate otherwise.[5]  Indeed, other provisions of the RLA make clear that carriers and unions may mutually agree on the bargaining procedures they will use to formulate CBAs, even if such procedures differ from the RLA Section 6 process.  Specifically, Section 2, Seventh of the RLA provides:  "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements *except in the manner prescribed in such agreements or in section 156 [Section 6] of this title*."  45 U.S.C. § 152, Seventh.

Accordingly, courts have consistently upheld provisions like Sections 1.F and 1.B, in which parties establish the procedures they will use to effect changes to CBAs.  *See, e.g.,* *Seaboard World Airlines, Inc. v. TWU*, 443 F.2d 437, 439 (2d Cir. 1971) (CBA providing that agreement could only be reopened for negotiation after a certain date and only with respect to compensation was valid under the RLA); *Trans Int'l Airlines, Inc. v. IBT*, 650 F.2d 949, 960-61 (9th Cir. 1980) (enforcing contract provision prohibiting strikes even when permitted under the RLA because "[t]he RLA does not, however, preclude the parties from adopting a different procedure by contract"); *ALPA v. Alaska Airlines, Inc.*, 2005 WL 2898140, at *1 (W.D. Wash. Oct. 28, 2005) ("The [RLA] . . . allows parties to follow their own contractually negotiated procedures for amending their [CBAs] in lieu of the lengthy procedures set forth in the statute. For nearly thirty years, ALPA and Alaska have engaged in interest arbitration concerning various

---

[5] In relevant part, Section 6 of the RLA provides that "[c]arriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice."  45 U.S.C. § 156.

issues they were unable to resolve in direct negotiations."); *Ry. Labor Execs.' Ass'n v. Boston & Me. Corp.*, 664 F. Supp. 605, 611 (D. Me. 1987) ("It has long been established that parties governed by the RLA may, by express agreement, extend, modify, or waive certain statutory requirements . . . It is clear to the Court that ARASA might properly request a meeting date outside of the statutory thirty-day period [prescribed by Section 6]."); *Burlington N. Inc. v. R.R. Yardmasters*, 1976 WL 1570, at *3 (N.D. Ill. June 21, 1976) (citing *Seaboard* for the proposition that while "Defendant contends that the moratorium clause is invalid because it abrogates its right to serve notices to change existing [CBAs] under Section 6," "[t]he Court concludes that the moratorium clause is an appropriate means for ensuring industrial peace for a limited period of time, and thus promotes the purposes of the Act"). Thus, there is no valid question of statutory interpretation that would prevent the Atlas Board of Adjustment and Southern Board of Adjustment from resolving the minor disputes that have arisen between the parties.[6]

## CONCLUSION

For the foregoing reasons, summary judgment should be granted and Defendants should be compelled to engage in an arbitration before the Atlas Board of Adjustment with respect to Atlas' grievance, pursuant to Sections 1.H and 21 of the Atlas CBA and the mandate of the RLA, and an arbitration before the Southern Board of Adjustment with respect to Southern's grievance, pursuant to Section 19 of the Southern CBA and the mandate of the RLA.

---

[6] And even if this Court were to find that the parties' contractual minor dispute does involve a related question of statutory interpretation, the Second Circuit has held that the appropriate procedure is to defer court review of the statutory questions until the end of the arbitral process. *See, e.g.*, *Worldcrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) ("We have recognized that district courts, despite the inapplicability of the FAA, may stay a case pursuant to the power inherent in every court to control the disposition of the causes [*sic*] on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) (staying litigation until RLA minor dispute "is resolved by the only body authorized to resolve such disputes, namely an arbitral panel").

Date:  April 20, 2017                      Respectfully submitted,
       Los Angeles, California
                                           O'MELVENY & MYERS LLP


                                           By:  /s/ Robert A. Siegel

                                           Robert A. Siegel
                                           (admitted *pro hac vice*)
                                           Michael G. McGuinness
                                           (admitted *pro hac vice*)
                                           400 South Hope Street
                                           Los Angeles, California 90071
                                           Telephone:  (213) 430-6000
                                           Facsimile:  (213) 430-6407
                                           rsiegel@omm.com
                                           mmcguinness@omm.com

                                           Mark W. Robertson
                                           Sloane Ackerman
                                           Times Square Tower
                                           7 Times Square
                                           New York, NY 10036
                                           Telephone:  (212) 326-2000
                                           Facsimile:  (212) 326-2061
                                           mrobertson@omm.com
                                           sackerman@omm.com

                                           *Attorneys for Plaintiffs*